UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
SECURITIES AND EXCHANGE COMMISSION,        )
                                           )
                   Plaintiff,              )
                                           )
          v.                               )
                                           )   Case No.
MAUREEN E. CURRAN                          )
                                           )
                   Defendants,             )
_____)

# COMPLAINT

Plaintiff Securities and Exchange Commission ("the Commission") alleges the following against defendant Maureen E. Curran ("Curran"), and hereby demands a jury trial:

## PRELIMINARY STATEMENT

1.      This case involves unlawful insider trading by Maureen Curran in the stock of Ariad Pharmaceuticals, Inc. ("Ariad"), a company based in Massachusetts engaged in the business of developing and marketing drugs to treat cancer. In October and November 2012, in her capacity as an employee of Ariad, Curran obtained material, nonpublic information concerning Ariad's communications with the United States Food & Drug Administration ("FDA") about the approval for marketing and sale of Ariad's drug, Iclusig. On December 14, 2012, Ariad publicly announced that while the FDA had approved Iclusig for sale and marketing, the approval was to be conditioned upon the company's inclusion of a safety warning identifying risks of blood clots and liver toxicity. Stock analysts who covered Ariad described the warning requirement as unexpected, and Ariad's stock price declined after the announcement. In November 2012, Curran sold 6,000 shares of Ariad stock, based on her knowledge of material

nonpublic information. By trading ahead of the December 14, 2012 public announcement, Curran avoided approximately $9,420 in losses.

2.      By knowingly or recklessly engaging in the conduct described in this Complaint, Curran violated Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## JURISDICTION

3.      The Commission brings this action pursuant to Sections 21(d) and 21A of the Exchange Act [15 U.S.C. §§ 78u(d) and 78u-1]. The Commission seeks a permanent injunction against Curran, enjoining her from engaging in the acts, practices and courses of business alleged in this Complaint, disgorgement of all profits, prejudgment interest, civil monetary penalties, and such other and further relief as the Court may deem just and appropriate.

4.      This Court has jurisdiction over this action pursuant to Sections 21(d)(1), 21(e) and 27 of the Exchange Act [15 U.S.C. §§78u(d)(1), 78u(e), 78aa]. Venue is proper in this District because Curran's acts and practices alleged herein occurred primarily in Massachusetts, Curran resides in Massachusetts, and Ariad is located in Massachusetts.

5.      In connection with the conduct described in this Complaint, Curran directly or indirectly made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange.

## DEFENDANT

6.      **Maureen E. Curran** is a resident of North Reading, Massachusetts. From 2006 to March 2014, Curran was employed at Ariad. Specifically from October 2012 to December 2012, Curran held the title Senior Director of Pharmacovigilance and Risk Management and, in that capacity, assisted the company with the development of several drugs by managing the

collection and reporting to the FDA of adverse events suffered by patients during clinical drug trials.

## RELEVANT ENTITY

7.      **Ariad Pharmaceuticals, Inc.** is a Delaware company with a principal place of business in Cambridge, Massachusetts. Ariad describes itself as an oncology company engaged in the business of developing and marketing drugs to treat cancer. During the relevant time period, Ariad was in the process of obtaining approval of and commencing marketing and distribution of Iclusig, a drug that was approved by the FDA as a second line option for the treatment of adult patients with certain types of leukemia. Ariad's common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act. Ariad is quoted under the symbol "ARIA" on the NASDAQ Global Select Market.

## FACTUAL ALLEGATIONS

### I.      Ariad's December 14, 2012 Announcement

8.      At approximately 12:56 p.m. on December 14, 2012, Ariad issued a press release stating that Iclusig had received accelerated approval from the FDA to be marketed and sold in the U.S. Concurrently, the FDA stated in its own press release that Iclusig was approved "with a Boxed Warning alerting patients and health care professionals that the drug can cause blood clots and liver toxicity." The FDA requires boxed warnings for certain FDA-approved prescription drugs in order to call attention to serious or life-threatening risks.

9.      Companies like Ariad are routinely the subject of published reports by stock analysts who evaluate companies as investment opportunities and make recommendations to investors about whether to buy, sell, or hold a particular company's securities. In reports

following Ariad's December 14, 2012, announcement, several analysts described the boxed warning as "unexpected" and/or "surprising."

10. After the December 14, 2012 announcement, Ariad's stock price declined approximately 20%. At market open, before the company's announcement, Ariad was trading at $23.79 per share; the price fell to $18.93 per share at market close that afternoon.

II. **Curran's Access to Material, Non-Public Information in Advance of Ariad's December 14, 2012 Announcement**

11. On October 25, 2012, in advance of a November 1, 2012 meeting between Ariad representatives and the FDA, Curran received an email from Ariad's Director of Regulatory Affairs regarding the FDA's comments on Ariad's proposed package insert with prescribing information (often referred to as a "label") for Iclusig. Among other things, the FDA stated in the email that it rejected Ariad's proposed label due to inadequate description of safety issues that had been observed in the company's clinical trial of Iclusig. The FDA provided a draft revision which included a boxed warning.

12. On November 1, 2012, Curran attended a meeting between Ariad and the FDA during which the prospect of including a boxed warning on Iclusig's label was discussed. Following the meeting, on November 7, 2012, Curran received an email from Ariad's Chief Medical Officer who forwarded an email from the FDA stating that their position on the inclusion of a boxed warning was firm. On November 8, 2012, Curran received an email from Ariad's Director of Regulatory Affairs stating that Ariad had confirmed with the FDA that it would implement a boxed warning on Iclusig's label.

13. The FDA's requirement that Ariad include a boxed warning on Iclusig's label constituted material nonpublic information in part because, among other things, that requirement had the potential to harm Iclusig's sales prospects. At the time of its approval, Iclusig was

4

Ariad's only drug which was approved for distribution in the United States.

### III.   Curran Sells Stock in Advance of Ariad's December 14, 2012 Announcement in Breach of Her Duties to Ariad

14.   Curran sold 3,000 shares of Ariad stock on November 12, 2012 and an additional 3,000 shares on November 15, 2012 for total proceeds of $123,000.

15.   Curran sold her Ariad stock on the basis of material nonpublic information that she received in the course of her employment at Ariad.  By selling her Ariad stock on November 12 and 15, 2012, Curran avoided a loss of approximately $9,420, which she would have incurred if the sales had taken place after the announcement on December 14, 2012.

16.   At all relevant times, Curran was an employee of Ariad who had a duty to Ariad and its shareholders not to trade, or direct others to trade, in the company's securities while in possession of material nonpublic information about Ariad.  Curran was subject to Ariad's insider trading policy, which prohibited trading Ariad stock while in possession of material, nonpublic information.

17.   Curran knew or recklessly disregarded that her sale of Ariad stock in November 2012 was in breach of a fiduciary duty to Ariad and its shareholders.  Prior to trading, she had been advised by Ariad's Director of Regulatory Affairs and Ariad's Chief Scientific Officer of her duty to maintain the confidentiality of the information she learned in Ariad's November 1, 2012 meeting with the FDA.  Earlier in 2012, Curran had also been reminded via email from Ariad's legal department that, under the terms of the company's insider trading policy, she was prohibited from trading in the company's securities while in possession of material nonpublic information.

18.   Curran knew or recklessly disregarded that the information she misappropriated from Ariad was material and nonpublic.

## FIRST CLAIM FOR RELIEF
### (Violation of Section 10(b) of the Exchange Act and Rule 10b-5)

19. The Commission repeats and incorporates by reference the allegations in paragraphs 1–18 of the Complaint as if set forth fully herein.

20. The information described in paragraphs 11 and 12 was material and nonpublic and considered by Ariad to be confidential. Ariad had policies and procedures protecting confidential information.

21. Curran learned of the material nonpublic information described in paragraphs 11 and 12 during the course of her employment with Ariad.

22. Curran traded in the stock of Ariad based on the material nonpublic information described in paragraphs 11 and 12.

23. As alleged herein, Curran directly or indirectly, singly or in concert, by the use of the means and instrumentalities of interstate commerce or of the mails, in connection with the purchase or sale of securities, intentionally, knowingly or recklessly: (a) employed or is employing devices, schemes or artifices to defraud; (b) made or is making untrue statements of material fact or omitted or is omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged or is engaging in acts, practices or courses of business which operate as a fraud or deceit upon other persons.

24. By reason of the foregoing, Curran has violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that this Court:

      A.      Enter a permanent injunction restraining Curran, as well as her agents, servants, employees, attorneys, and other persons in active concert or participation with her, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect, in violation of Section 10(b) of the Exchange Act [15 U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. §240.10b-5];

      B.      Require Curran to disgorge the ill-gotten gains from her insider trading, plus prejudgment interest;

      C.      Order Curran to pay an appropriate civil penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. §78u-1];

      D.      Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

      E.      Award such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the Commission demands a jury trial in this action of all issues so triable under the claims in this Complaint.

Respectfully submitted,

/s/ Deena R. Bernstein
Deena R. Bernstein (Mass. Bar No. 558721)
   Senior Trial Counsel
Michael J. Vito (Mass. Bar No. 675524)
   Enforcement Counsel
Celia D. Moore (Mass. Bar No. 542136)
   Assistant Regional Director
Martin F. Healey (Mass Bar No. 227550)
   Regional Trial Counsel
Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
Boston Regional Office

        33 Arch Street  
        Boston, MA  02110  
        (617) 573-8813 (Bernstein direct)  
        (617) 573-4590 (fax)  
        bernsteind@sec.gov (Bernstein email)

Dated:  June 27, 2017